**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 9:25-cv-80879-LEIBOWITZ/MCCABE**

**ALEXANDER HOWELL-FEDOROV and**
**DAMON FEDOROV HOWELL-KARRIEM,**
        *Plaintiffs,*

*v.*

**BANK OF AMERICA, N.A.,**
        *Defendant.*
_____/

## OMNIBUS ORDER

Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Ryon M. McCabe, recommending that *pro se* Plaintiffs' Emergency Motion for a Temporary Restraining Order ("TRO") against Bank of America, N.A. ("BoA") [ECF No. 1] be DENIED [ECF No. 7]. Also pending are Plaintiffs' Motion for Leave to Proceed *in forma pauperis* [ECF No. 3] ("IFP Motion"), Plaintiffs' Amended Emergency Motion for TRO to Prevent Foreclosure [ECF No. 10], and Plaintiffs' SEALED Amended Emergency *Ex Parte* Motion for TRO to Prevent Foreclosure [ECF No. 11]. At bottom, by filing this action, Plaintiffs seeks to prevent Defendant BoA from conducting a foreclosure sale of Plaintiffs' property located at 12914 Raymond Drive, Loxahatchee Groves, Florida 33470, scheduled for 10:00 a.m. on July 17, 2025. [*See* ECF No. 10 at 3].

Because Plaintiffs seek emergency relief, the typical 14-day objection period to an R&R will expire well after the foreclosure sale Plaintiffs seek to prevent. So, the Court cannot wait for Plaintiffs to file objections. Further, Plaintiffs have attempted to cure deficiencies identified by the Magistrate Judge in the R&R with subsequent filings. [*See* Certification of Efforts to Give Notice, ECF No. 9; Am. Emergency TRO Motion, ECF No. 10, and SEALED Am. Emergency *Ex Parte* TRO Motion, ECF No. 11]. Given the unique posture here, the Court will decide all pending motions in one fell swoop.

After *de novo* review of the Motion for TRO [ECF No. 1] and its Exhibit [ECF No. 1-1], the Court **ADOPTS AND AFFIRMS** the Report and Recommendation of the Magistrate Judge [ECF No. 7] and incorporates its findings and conclusions fully herein.  Upon *de novo* review of Plaintiffs' IFP Motion [ECF No. 3] and Plaintiff's Amended Motions for TRO To Prevent Foreclosure [ECF Nos. 10, 11], relevant portions of the record, and the governing law, the Court rules as follows:

1.      Plaintiffs' Motion for a Temporary Restraining Order [**ECF No. 1**] is **DENIED**.

2.      Plaintiffs' IFP Motion [**ECF No. 3**] is **DENIED**.

Plaintiff's financial affidavit submitted in support of the motion does not establish Plaintiff's indigency such that he cannot afford to pay the $405.00 filing fee.  The IFP Statute requires the court to determine whether "the statements in the [applicant's] affidavit satisfy the requirement of poverty." *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976); *see* 28 U.S.C. § 1915(a)(1).  An applicant's "affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004); *see also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (IFP status need not be granted where one can pay or give security for the costs "and still be able to provide himself and dependents with the necessities of life.").  The Department of Health and Human Services (HHS) poverty guidelines are central to an assessment of an IFP applicant's poverty. *See Taylor v. Supreme Court of New Jersey*, 261 F. App'x 399, 401 (3d Cir. 2008) (using HHS Guidelines as basis for section 1915 determination); *Lewis v. Ctr. Mkt.*, 378 F. App'x 780, 784 (10th Cir. 2010) (affirming use of HHS guidelines).  The section 1915 analysis requires "comparing the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement." *Thomas v. Chattahoochee Judicial Circuit*, 574 F. App'x 916, 917 (11th Cir. 2014).  Permission to proceed *in forma pauperis* is committed to the sound discretion of the court.  *Camp v.*

*Oliver*, 798 F.2d 434, 437 (11th Cir. 1986); *see also Thomas*, 574 F. App'x at 916 ("A district court has wide discretion in ruling on an application for leave to proceed IFP.").

Plaintiffs' financial affidavit in support of his IFP Motion represents a monthly income of $2,834.00.  [ECF No. 3 at 1–2].  Plaintiffs' annual income is, therefore, $34,008.00.  Plaintiff claims a dependent spouse (60) and son (27) who earn no income.   [*Id.* at 1–2, 3].  Plaintiffs list assets of $809.00 in bank accounts [*id.* at 2] along with a 2006 Porsche Cayenne valued at $3,800 [*id.* at 3].  Plaintiffs do not disclose the home which is the subject of the foreclosure sale as an asset.  [*See id.* at 3].   Plaintiffs' monthly expenses total $2,690.00, which includes $1,700.00 per month in rent or mortgage payment.  [*Id.* at 4].  Upon review, Plaintiffs have not shown indigency that would entitled them to proceed in this litigation without payment the filing fee.  *See* 87 Fed. Reg. 3315 (Jan. 21, 2022) (setting $18,310.00–$23,030.00 per year as the relevant poverty guideline).

3.      Plaintiffs' Amended Emergency Motion for TRO To Prevent Foreclosure Sale **[ECF No. 10**] is **DENIED.**

In order to obtain a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005).  A temporary restraining order or preliminary injunction is "an extraordinary and drastic remedy" which a court should grant only when the movant clearly carries the burden of persuasion as to each of the four prerequisites.  *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

Plaintiffs contend they meets the four prerequisites for obtaining a TRO.  As for substantial likelihood of success, Plaintiffs allege the assignments of the mortgage upon which the foreclosure

sale is predicated are legally defective and fraudulent under Florida law.  Moreover Plaintiffs maintain that Regulation X requires BoA to pause all foreclosure-related activity until Plaintiff's QWR/Notice of Error is resolved.  [ECF No. 10 at 2–3].  As for irreparable harm, Plaintiffs say the sale of their home will result in an "irreversible loss of property and equity, damages for which monetary compensation is inadequate."  [*Id.* at 3].  Plaintiffs argue the balance of equities favor them because temporarily enjoining the foreclosure sale preserves the status quo without imposing undue burden on BoA.  [*Id.*].  And, finally, Plaintiff argues that preventing foreclosure based upon fraudulent assignments is in the public's interest.  [*Id.*].

Upon review, Plaintiffs' Motion fails out of the gate.  Plaintiffs first argue a substantial likelihood of success on the merits because Florida law requires an assignment of a mortgage to be "executed, witnessed, and acknowledged" to be valid, suggesting that the assignment in this case was not executed, witnessed, or acknowledged.  [ECF No. 10 at 3].  However, Plaintiffs filed an uncertified copy of the subject assignment with the Complaint.  [*See* ECF No. 1-1].  The Assignment appears to be executed, witnessed, notarized, and was apparently recorded.  [*See id.*].

Moreover, Plaintiffs lack standing to challenge the validity of the assignment.  *See McCloud v. HSBC Bank USA, N.A.*, 618 F. App'x 660, 660 n.2 (11th Cir. 2015) ("[P]laintiff as non-party to the assignments—lacks standing to challenge the validity of the assignments."); *see also Kapila v. Atlantic Mtg & Inv. Corp.*, 184 F.3d 1335, 1338 (11th Cir. 1999) (holding that "a subsequent assignment of the mortgagee's interest … does not change the nature of the interest of the mortgagor or someone claiming under him.").  Furthermore, Florida law allows the assignment of mortgages, and Plaintiffs do not deny they are in default.  *See* Fla. Stat. § 673.2031.  Accordingly, Plaintiffs fail to show a substantial likelihood of success on their fraudulent assignment claim.

Turning next to Plaintiff's Regulation X contentions.  Under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, the Consumer Financial Protection Bureau

"CFPB") promulgated Regulation X, effective January 10, 2014.  *See* Mortgage Servicing Rules Under

the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696–01, 10696 (Feb. 14,

2013).  Regulation X places certain obligations on mortgage servicers when a borrower submits a loss

mitigation application and lays out distinct procedures and rules for submitting such applications

regarding measures for assessing completeness, timelines, and evaluation protocols. *See generally* 12

C.F.R. § 1024.41.

> Regulation X establishes that when a servicer receives an application 45 days prior to
> a foreclosure sale, the servicer is required to immediately ascertain whether the
> application is complete and notify the borrower of this determination in writing within
> 5 days.  12 C.F.R. § 1024.41(b).  Generally, an application is considered complete when
> the servicer "has received all the information that the servicer requires from a borrower
> in evaluating applications for the loss mitigation options available to the borrower."
> 12 C.F.R. § 1024.41(b)(1).  If the application is deemed incomplete, the servicer must
> "exercise reasonable diligence in obtaining documents and information to complete
> [the] application," informing the borrower in the initial notification of "the additional
> documents and information the borrower must submit to make the loss mitigation
> application complete" and state "a reasonable date by which the borrower should
> submit the documents and information." 12 C.F.R. § 1024.41(b)(1), (b)(2).  If the
> borrower fails to respond within the reasonable time provided and the application
> remains incomplete, the servicer may, at its discretion, evaluate the incomplete
> application. *See* 12 C.F.R. § 1024.41(c)(2).  However, if the borrower submits the
> requested documents or no additional information is requested, the application is
> considered complete and the servicer's evaluation obligations under subsections (c)
> are triggered as long as the application qualifies as complete—either in actuality or
> facially—more than 37 days before the foreclosure sale. *See* 12 C.F.R. § 1024.41(c).
> Pursuant to subsection (c), within 30 days of receiving the complete application, the
> servicer must evaluate the application and determine all loss mitigation options
> available to the borrower and "[p]rovide the borrower with a notice in writing stating
> the servicer's determination of which loss mitigation options, if any, it will offer to the
> borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. § 1024.41(c).
> Additionally, if the borrower submits a complete application more than 37 days before
> a scheduled foreclosure sale, the servicer is prohibited from proceeding with the
> foreclosure sale until the servicer either (a) notifies the borrower of its decision
> regarding loss mitigation options, (b) the borrower "rejects all loss mitigation options
> offered", or (c) the "borrower fails to perform under an agreement on a loss mitigation
> option." *See id.* § 1024.41(g). Notwithstanding these mandates, "[n]othing in § 1024.41
> imposes a duty on a servicer to provide any borrower with any specific loss mitigation
> option." 12 C.F.R. § 1024.41(a).

*Clark v. HSBC Bank USA, Nat'l Ass'n,* 664 F. App'x 810, 812 (11th Cir. 2016) (per curiam).  Here,

Plaintiffs fail to disclose any details about the alleged loss mitigation application submitted to BoA.

[See ECF No. 10 at 3].   Importantly, Plaintiffs do not state whether the application was complete or timely.   Under Regulation X, BoA would be required to suspend tomorrow's foreclosure sale if Plaintiffs submitted a complete loss mitigation application to BoA more than 37 days before July 17, 2025.  Plaintiffs, however, have not submitted evidence showing this in the TRO application.  Because Plaintiffs failed to show the mitigation loss application was timely and complete, Plaintiffs fail to establish a substantial likelihood of success on the merits of the Regulation X claim.

To obtain a TRO, a movant must "clearly establish" all four elements.  *Cafe 207, Inc. v. St. Johns Cty.*, 989 F.2d 1136, 1137 (11th Cir. 1993).  Plaintiff has not met this burden, and this Court need not analyze remaining elements when the movant fails to satisfy one of them.  Accordingly, the Motion [ECF No. 10] must be DENIED.

4. Plaintiffs' Amended Emergency *Ex Parte* Motion for TRO To Prevent Foreclosure Sale [**ECF No. 11**] is also **DENIED***. The Clerk* is DIRECTED to UNSEAL the Motion [ECF No. 11] for failure to comply with the Court's Local Rules.  *See* S.D. Fla. Loc. R. 5.4.

Upon review, this Motion is an exact duplicate of the Amended Motion for TRO [ECF No. 10], except that it was improperly filed under seal.  Accordingly, the Motion is DENIED for the same reasons the Court denied ECF No. 10.

5. This case is DISMISSED WITHOUT PREJUDICE for failure to pay the filing fee.

6. Any pending motions are DENIED AS MOOT.

7. *The Clerk* is DIRECTED to CLOSE THIS CASE.

**DONE AND ORDERED** in the Southern District of Florida this 16th day of July, 2025.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    Alexander Howell-Fedorov and Damon Howell-Karriem, *pro se*
        12914 Raymond Drive
        Loxahatchee Groves, FL 33470